IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JOAN VIOTTY, | : | 1:06-cv-6 |
|         Plaintiff, | : | |
| | : | |
|     v. | : | Hon. John E. Jones III |
| | : | |
| BANK OF NOVA SCOTIA, | : | |
|         Defendant. | : | |

## MEMORANDUM

**June 17, 2010**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is Defendant Bank of Nova Scotia's ("Defendant"

or "Scotiabank") Motion for Summary Judgment (Doc. 100)("the Motion") filed

on October 29, 2009. The Motion has been fully briefed by the parties and is

therefore ripe for our review. For the reasons that follow, the Motion shall be

granted.

## I.     STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II. FACTS

On March 23, 2004, two heavily armed male robbers, wearing masks and gloves, entered and robbed the Frederiksted branch of Scotiabank (hereinafter "the Branch"). (SF 1, 10). Plaintiff Joan Viotty ("Plaintiff" or "Viotty") was in the Branch when the robbers entered. (SF 3). One of the robbers jumped over the counter and forced three of the tellers to empty their registers into a bag while the other robber guarded the door. (SF 4-5). There was no security guard on duty during the robbery.[1] (SF 2). The robbers never spoke directly to Plaintiff during

---

[1] The Branch did employ a security guard for the Christmas season. Inasmuch as this robbery occurred in March, there was no Christmas season security guard on duty. (Defendant's Reply to Plaintiff's Statement of Facts, ¶ 2).

the robbery, but ordered all of the Branch's occupants not to move. (SF 6). No shots were fired during the robbery and no one in the branch was physically injured. (SF8-9). Plaintiff did suffer fear and anxiety during the robbery, causing her to urinate on herself. (Plaintiff's Statement of Facts ("PSF") 14). The robbers got away with approximately $14,400 in cash. (SF 16). Plaintiff wanted to leave the Branch following the robbery but was instructed to stay in the Branch by an employee. (PSF 15). Following the robbery, the get-away car was found burnt beyond recognition. (SF 12).

In June of 1999, the Branch moved from its previous location at No. 1 Strand Street to its current location. (SF 17). Prior to the March 23, 2004 robbery, there had been no robberies at the current location (SF 18), however the Branch was robbed once at its previous Strand Street location. (SF 19).

Prior to the 2004 robbery, bank employees testified that they felt safe in the Branch, and have never complained about the Branch's security or requested the presence of a security guard. (SF 26-27). Prior to the 2004 robbery, there were no complaints about security by Branch customers, including Viotty. (SF 28).

The current Branch location is in an open area that is highly visible to the general public. (SF 37-38). The location afforded a line of sight allowing the general public to see people entering and leaving the Branch. (SF 39). The Branch

location was on the "route of checking" for the local police. (SF 42).

Scotiabank's security investigation department had approved the plans for the layout of the Branch, including the placement of tellers, the teller supervisor, doors, windows and surveillance cameras. (SF 43). At the time of the robbery, the Branch was equipped with a burglar alarm system, a video surveillance system and a closed circuit TV system that was monitored and serviced by ADT Security. (SF 44). There was also an ADT sticker located in the Branch, warning that the premises was alarmed and monitored. (SF 46). Surveillance cameras recorded people entering the bank at both the side and front door entrances. (SF 48). The Branch utilized mobile teller units and anti-bank safes, which limit the amount of funds onhand at the bank and are not generally known by the public. (SF 51).

Scotiabank's policy is not to employ armed guards at any of its branches worldwide. (SF 52). Scotiabank's policy is based upon its experience that guards are not a deterrent to robbers and that the presence of a guard creates more danger to customers and employees during a robbery. (SF 54-55).

The manager of the Branch is responsible for ensuring precautionary measures are taken against burglary, hold-ups and frauds. (SF 55). Using a video, manuals, and ongoing instructions and discussions, Scotiabank trained all employees on ways to prevent and deter robbers as well as what to do during a

robbery to minimize the risk of injury to customers and employees.  (SF 56-65).

The Bank Protection Act ("BPA") establishes minimum security standards that apply to banks, including Scotiabank.  (SF 66-68).  The minimum standards do not include having a security guard on premises, armed or unarmed.  (SF 73).  The Branch adhered to the minimum industry standards.  (SF 75).

Plaintiff claims that she developed significant post-robbery stress/fear related conditions including nightmares and bladder control problems.  (PSF 14).

## III.  PROCEDURAL HISTORY

Plaintiff Joan Viotty ("Plaintiff" or "Viotty") filed the instant action, through counsel, by filing a Complaint on January 9, 2006.  (Doc. 1).   The Complaint appears to assert claims for negligence and false imprisonment,  although the claims are not separated into counts.  Plaintiff also seeks punitive damages.

 Following the close of discovery in this matter, Defendant filed the instant Motion.

## IV.  DISCUSSION

The United States Virgin Islands, absent local laws to the contrary, apply the rules of common law as expressed in the restatements of the law.  *See* I V.I. Code Ann. § 4 (1957).  This includes the Restatement (Second) of Torts.  *See Bright v. United Corp.*, 48 V.I. 308, 311 (V.I. Super. Ct. 2007).

## A. NEGLIGENCE CLAIM

Plaintiff claims that the Defendant was negligent by failing to keep the bank in a safe condition and failing to protect Plaintiff against a robbery. (Compl., ¶ 18). The elements of a negligence claim are duty, breach of that duty, causation and damages. *See* Restatement (Second) of Torts § 281. Section 344 of the Restatement (Second) of Torts specifically governs Plaintiff's allegations that she was injured on the Defendant's premises by the intentional criminal acts of unidentified third persons. That section provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to:
>
> (a) discover that such acts are being done or likely to be done; or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Further, "[s]ince the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur." Restatement (Second) of Torts § 344, comment f.; *see also Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 562 (E.D. Pa. 2004), *aff'd* 121 Fed. Appx. 980 (3d Cir. 2005)

(the duty to reasonably protect does not arise until the landowner has notice of criminal activity).

Plaintiff's assertion that a bank robbery at the Branch was foreseeable rests on conclusory allegations that banks are optimal targets for robbers and that crime statistics in St. Croix are on the rise.[2] Plaintiff's argument ignores that there had never been a bank robbery at the Branch at its current location before the incident in question, nor has the Branch been the site of any other types of violent crimes at its new location. The fact that the Branch was robbed at its previous location in 1999 is simply not enough to impute an additional duty upon the Branch to warn or protect its customers. Further, neither the Plaintiff nor any other customers or employees of the Branch complained to the Defendant about security concerns at the Branch. Indeed, Branch employees testified that, prior to this robbery, they felt safe inside the Branch.

Additionally, the Branch complied with the industry security standards as set forth in the Bank Protection Act. At the time of the robbery, the Branch was equipped with a variety of safety measures, including a burglar alarm system, a video surveillance system and a closed circuit television system monitored by ADT

---

[2] Plaintiff's argument essentially invites the Court to adopt a higher standard of care owed by banks to their customers. We decline to accept this invitation to make new law.

Security.  The banking industry standards do not require the presence of a security guard at bank locations.  Further, this particular Branch was in an open location and was on the "route of checking" followed by the local police.

Based on all of the foregoing, we find that there is no genuine issue of material fact that remains for trial on Plaintiff's negligence claim.  There is simply no basis to find that the Branch breached its duty of care to the Plaintiff.

## B.    FALSE IMPRISONMENT

Plaintiff claims that, after the robbery, she wanted and tried to leave the Bank but was "detained against her will by Bank personnel."  (Doc. 113, p. 17).  Plaintiff argues that, "[a]t best, the Bank's conduct was negligent; at worst, it constituted an intentional tort."  (*Id.*).

In order to state a claim for false imprisonment in the Virgin Islands, the plaintiff must allege facts supporting the following elements: (1) the defendant intended to confine the plaintiff within boundaries fixed by the defendant; (2) the actions of the defendant directly or indirectly resulted in such confinement of the plaintiff; and (3) the plaintiff was conscious of the confinement or harmed by it.  *See* Restatement (Second) of Torts § 35.

A review of the Plaintiff's deposition testimony indicates to the Court that a bank employee told Plaintiff that she could not leave the Branch and had to wait

for the police.  (Doc. 113, Ex. A, p. 38).  While Plaintiff was waiting for the police, she was offered tea by a bank employee.  (Id. at p. 42).

While it is true that Plaintiff was asked not to leave by the bank employees, we do not find the conduct of the bank employees sufficient to rise to the level of false imprisonment.  Further, while Plaintiff suffered some discomfort by waiting for the police at the Branch, we simply cannot find that she was harmed by waiting for an hour in the pants she had urinated in.  While that situation was unfortunate, Plaintiff had just witnessed a bank robbery, and it was entirely logical that bank employees would detain her pending an interview by the police.  While Plaintiff may technically satisfy the first two elements of a false imprisonment claim, we do not perceive that she suffered any untoward harm, and thus she fails at the third element.  Accordingly, we shall grant summary judgment in favor of the Defendant on this claim.

## IV.    CONCLUSION

Based on all of the foregoing, the Defendant's Motion for Summary Judgment shall be granted.  An appropriate Order shall issue.